**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | | |
|---|---|---|
| **TOMMY BAKER, individually and** | § | **Docket No. _____** |
| **on behalf of all others similarly situated,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **NEW PROSPECT COMPANY,** | § | **CLASS/COLLECTIVE ACTION** |
| | § | |
| | § | **PURSUANT TO 29 U.S.C. § 216(b)/** |
| **Defendant.** | § | **FED. R. CIV. P. 23** |
| | § | |

## ORIGINAL COMPLAINT

### I.    Summary

1.      Tommy Baker ("Baker") brings this lawsuit to recover unpaid overtime wages and other damages from New Prospect Company ("NPC") under the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act, O.R.C. §§4111 *et seq.*, ("the Ohio Wage Act"), the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code §4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Wage Acts"), and the Pennsylvania Minimum Wage Act, 43 Pa. Stat. Ann. § 333.104 ("PMWA").

2.      Baker worked for NPC as a Completion Consultant.

3.      Baker and the other employees like him regularly worked for NPC in excess of forty (40) hours each week.

4.      But NPC never paid these employees overtime for the hours worked in excess of forty (40) hours in a single workweek.

5.      Instead of paying overtime as required by the FLSA, the Ohio Wage Acts, and the PMWA, NPC paid these employees a daily rate with no overtime compensation.

6.      NPC also never paid Baker and those similarly situated employees a salary.

7.      This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## II.      Jurisdiction and Venue

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.      The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d).

10.      The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

11.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

12.      NPC conducts substantial business operations in this District and Division. Indeed, Baker and other Putative Class Members performed work related tasks for NPC in this District and Division.

13.      For example, Baker worked for NPC in or around Washington County, Pennsylvania.

## III.      The Parties

14.      Baker worked for NPC as a W-2 employee from approximately March 2017 until November 2017. Specifically, Baker worked as a Completions Consultant.

15.      Baker worked for NPC in Pennsylvania and Ohio.

16.      Throughout Baker's employment with NPC, NPC classified him as an exempt employee and paid him a day-rate with no overtime compensation.

17.      Baker's consent to be a party is attached hereto as Exhibit A.

18.      Baker brings this action on behalf of himself and all other similarly situated workers who NPC classified as W-2 employees and paid a day-rate with no overtime compensation. NPC paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours

worked that they worked in excess of 40 hours in a single workweek in accordance with the FLSA, the Ohio Wage Acts, and the PMWA.

19.     The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All current and former day-rate employees working for, or on behalf of, NPC, and who were not paid overtime during the last three years ("Putative Class Members").**

20.     Baker also seeks class certification of such a class under Fed. R. Civ. P. 23 under the PMWA, defined as follows:

> **All current and former day-rate employees working for, or on behalf of, NPC, and who were not paid overtime during the last three years in Pennsylvania ("Pennsylvania Class").**

21.     Baker also seeks class certification of such a class under Fed. R. Civ. P. 23 under the Ohio Wage Acts, defined as follows:

> **All current and former day-rate employees working for, or on behalf of, NPC, and who were not paid overtime during the last three years in Ohio ("Ohio Class").**

22.     Defendant NPC is a prominent well site supervision and consulting engineering staffing company, doing business throughout the United State, including in Pennsylvania and Ohio. NPC can be served with process by serving its registered agent, Richard Howard, at 600 South 16th Street, Fort Smith, Arkansas 72901-4728.

### IV.     Coverage Under the FLSA

23.     At all times hereinafter mentioned, NPC has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

24.     At all times hereinafter mentioned, NPC has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

25.     At all times hereinafter mentioned, NPC has been part of an enterprise engaged in

commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as tools, cell phones, and personal protective equipment—that have been moved in or produced for commerce by any person and in that NPC has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

26.     At all times hereinafter mentioned, Baker and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

27.     As will be shown through this litigation, NPC classified Baker and the Putative Class Members as employees and uniformly dictated the pay practices of Baker and the Putative Class Members.

## V.     Facts

28.     NPC is an oil and natural gas staffing company operating throughout the United States, including in Pennsylvania and Ohio.[1]

29.     To provide services to many of its customers, NPC contracts with certain companies to provide them with personnel to perform their necessary work.

30.     Many of these individuals worked for NPC on a day-rate basis and make up the proposed Putative Class.

31.     For example, Baker worked for NPC as Completions Consultant during the relevant time period (in Ohio and Pennsylvania). Throughout his employment with NPC, NPC classified Baker as an exempt employee and paid him a day-rate with no overtime compensation

---

[1] http://www.newprospect.com/WhatWeDo.aspx (last visited January 21, 2019)

32.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

33.     NPC paid all of these employees a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

34.     Baker and the Putative Class Members worked for NPC under this pay scheme.

35.     NPC did not pay Baker and the Putative Class Members a salary.

36.     Rather, NPC paid Baker and the Putative Class Members a day-rate.

37.     If Baker and the Putative Class Members did not work, NPC did not pay them.

38.     NPC paid Baker a day-rate of approximately $1,650.00 for each approved day he worked for NPC.

39.     NPC paid Baker and the Putative Class Members the day-rate regardless of the number of hours they worked, including those in excess of 40 hours in a single workweek.

40.     NPC did not pay Baker and the Putative Class Members overtime compensation.

41.     NPC subjected Baker and the Putative Class Members to the same or similar pay practices.

42.     Baker and the Putative Class Members regularly worked overtime for NPC.

43.     Baker worked well in excess of 40 hours each week while employed by NPC, often for weeks at time.

44.     As a Completions Consultant, Baker's primary job duties included operating oilfield machinery, performing maintenance on the equipment used, and working with other oilfield employees to insert plugs, packers, and other blocking devices down well.

45.     The work Baker and the Putative Class Members performed was an essential part of NPC's core business of staffing oilfield companies with quality employees.

46.     Indeed, NPC and/or the client it contracted with controlled all of the significant or

meaningful aspects of the job duties performed by Baker.

47.    NPC ordered the hours and locations Baker worked, tools used, and rates of pay received.

48.    NPC directly determined Baker's opportunity for profit and loss. Baker's earning opportunity was based on the number of days NPC scheduled him to work.

49.    The daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by NPC and/or its clients. Virtually every job function was pre-determined by NPC and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. The Putative Class Members were prohibited from varying their job duties outside of these pre-determined parameters.

50.    Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

51.    Baker and the Putative Class Members did not possess any specialized or unique skill set.

52.    NPC did not require Baker or Putative Class Members to have an advanced degree.

53.    To the extent Baker and the Putative Class Members made "decisions," such decisions did not require the exercise of independent discretion and judgment.

54.    Instead, Baker and the Putative Class Members applied well-established techniques and procedures and used established standards to evaluate any issues.

55.    Baker and the Putative Class Members did not set the techniques and procedures utilized to perform their job duties and did not set quality standards.

56.    Baker and the Putative Class Members were not allowed to deviate from the techniques and procedures utilized to perform their job duties or from any quality standards

57.    At all relevant times, NPC maintained control, oversight, and direction of Baker and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll,

and other employment practices.

58.     Baker and the Putative Class Members did not have the authority to hire and/or fire other NPC employees or its clients' employees.

59.     For the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to servicing energy operations in the field.

60.     All of the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

61.     The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

62.     Based on the job duties they performed, Baker and the Putative Class Members are clearly non-exempt employees under the FLSA, Ohio Wage Acts, and the PMWA.

63.     NPC knew Baker and the Putative Class Members worked more than 40 hours in a week.

64.     Indeed, NPC required Baker and the Putative Class Members to work substantial overtime without overtime compensation.

65.     NPC's policy of failing to pay their day-rate employees, including Baker, overtime violates the FLSA, the Ohio Wage Acts, and the PMWA because these workers are, for all purposes, employees performing non-exempt job duties.

66.     NPC classified Baker and the Putative Class Members as exempt from overtime compensation.

67.     NPC knew and knows these workers are not exempt from the FLSA, the Ohio Wage Acts, and the PMWA's overtime provisions.

68.     NPC, through its clients, has been subject to other FLSA and state wage law related lawsuits. NPC even changed the way it paid and classified Baker and Putative Class Members following

a lawsuit that involved employees NPC staffed to one of its many clients.

69.     NPC is well aware of the overtime requirements of the FLSA, the Ohio Wage Acts, and the PMWA.

70.     NPC knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA, the Ohio Wage Acts, and the PMWA.

## VI.     FLSA Violations

71.     As set forth herein, NPC has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of forty (40) hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

72.     NPC knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. NPC's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

73.     Accordingly, Baker and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, and attorneys' fees and costs.

## VII.     PMWA VIOLATIONS

74.     Baker brings this claim under the PMWA as a Rule 23 class action.

75.     The conduct alleged violates the PMWA (43 Pa. Stat. Ann. § 333.104).

76.     At all relevant times, NPC was subject to the requirements of the PMWA.

77.     At all relevant times, NPC employed Baker and each member of the Pennsylvania Class as an "employee" within the meaning of the PMWA.

78.     The PMWA requires employers like NPC to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 hours in any one week. Baker and each member of the Pennsylvania Class are entitled to overtime pay under the PMWA.

79.     NPC had a policy and practice of misclassifying Baker and each member of the Pennsylvania Class as exempt employees and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

80.     Baker and each member of the Pennsylvania Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

81.     Baker and each member of the Pennsylvania Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by NPC, as provided by the PMWA.

### VIII.   Ohio Wage Act Violations

82.     Baker brings this claim under the Ohio Wage Acts as a Rule 23 class action.

83.     The conduct alleged violates the Ohio Wage Acts (O.R.C. §§ 4111).

84.     At all relevant times, NPC was and is subject to the requirements of the Ohio Wage Acts.

85.     At all relevant times, NPC employed Baker and each Ohio Class Member as an "employee" within the meaning of the Ohio Wage Acts.

86.     The Ohio Wage Acts require employers like NPC to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 hours in any one week. Baker and each member of the Ohio Class are entitled to overtime pay under the Ohio Wage Acts.

87.     NPC had a policy and practice of misclassifying Baker and each member of the Ohio class as exempt employees and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

88.     Baker and each member of the Ohio Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

89.     Baker and each member of the Ohio Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by NPC, as provided by the Ohio Wage Acts.

## IX.     Class and Collective Action Allegations

90.     Baker incorporates all previous paragraphs and alleges that the illegal pay practices NPC imposed on Baker were likewise imposed on the members of the Classes.

91.     NPC victimized numerous individuals through this pattern, practice, and policy which is in willful violation of the FLSA and the state wage laws of Pennsylvania and Ohio.

92.     Numerous other individuals who worked with Baker indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

93.     Based on his experiences and tenure with NPC, Baker is aware that NPC's illegal practices were imposed on the members of the Classes.

94.     The members of the Classes were all not afforded the overtime compensation when they worked in excess of 40 hours per week, but rather were paid a day-rate.

95.     NPC's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the members of the Classes.

96.     Baker's experiences are therefore typical of the experiences of the members of the Classes.

97.     The specific job titles or precise job locations of the various members of the Classes do not prevent class or collective treatment.

98.     Baker has no interests contrary to, or in conflict with, the members of the Classes. Like each member of the Classes, Baker has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

99.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

100.    Absent this action, many members of the Classes likely will not obtain redress of their injuries, and NPC will reap the unjust benefits of violating the FLSA and applicable state labor laws.

101.    Furthermore, even if some of the members of the Classes could afford individual litigation against NPC, it would be unduly burdensome to the judicial system.

102.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

103.    The questions of law and fact common to each of the members of the Classes predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

      a.     Whether NPC employed the members of the Classes within the meaning of the applicable state and federal statutes, including the FLSA, the Ohio Wage Acts, and the PMWA;

      b.     Whether NPC improperly misclassified the members of the Classes as exempt employees;

      c.     Whether NPC's decision to classify the members of the Classes as exempt employees was made in good faith;

      d.     Whether NPC's decision to not pay time and a half for overtime to the members of the Classes was made in good faith;

e.  Whether NPC's violation of the FLSA, the Ohio Wage Acts, and the PMWA was willful; and

f.  Whether NPC's illegal pay practices were applied uniformly across the nation to all members of the Classes.

104.  Baker's claims are typical of the claims of the members of the Classes. Baker and the members of the Classes sustained damages arising out of NPC's illegal and uniform employment policy.

105.  Baker knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

106.  Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## X.  Jury Demand

107.  Baker demands a trial by jury.

## XI.  Relief Sought

108.  WHEREFORE, Baker prays for judgment against NPC as follows:

a.  An Order designating the Potential Putative FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.  For an Order pursuant to Section 16(b) of the FLSA finding NPC liable for unpaid back wages due to Baker and the Potential Putative FLSA Class for liquidated damages equal in amount to their unpaid compensation;

c.      For an Order designating the state law Classes as class actions pursuant to Fed.

R. Civ. P. 23;

d.      For an Order appointing Baker and his counsel as Class Counsel to represent

the interests of the both the federal and state law Classes;

e.      For an Order awarding attorneys' fees, costs, and pre- and post-judgment

interest; and

f.      For an Order granting such other and further relief as may be necessary and

appropriate.

Respectfully submitted,

By: */s/ Andrew W. Dunlap*
  **Andrew W. Dunlap**
  Texas Bar No. 24078444
  **William R. Liles**
  Texas Bar No. 24083395
  (*Pending Pro Hac Vice*)
  JOSEPHSON DUNLAP LAW FIRM
  11 Greenway Plaza, Suite 3050
  Houston, Texas 77046
  713-352-1100 – Telephone
  713-352-3300 – Facsimile
  adunlap@mybackwages.com
  wliles@mybackwages.com

  **AND**

  Richard J. (Rex) Burch
  Texas Bar No. 24001807
  **BRUCKNER BURCH, P.L.L.C.**
  8 Greenway Plaza, Suite 1500
  Houston, Texas 77046
  713-877-8788 – Telephone
  713-877-8065 – Facsimile
  rburch@brucknerburch.com

  **AND**

  Joshua P. Geist
  PA. I.D. No. 85745
  **GOODRICH & GEIST, P.C.**

3634 California Ave.
Pittsburgh, PA 15212
Tel: (412) 766-1455
Fax: (412)766-0300
josh@goodrichandgeist.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**